LIZSANDRA GULLON o/b/o    :
N.A.P.P.               :
                      :
     v.              :     C.A. No. 11-099ML
                      :
MICHAEL J. ASTRUE,     :
Commissioner of the Social Security  :
Administration         :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed a Complaint on behalf of her daughter on March 11, 2011 seeking to reverse the decision of the Commissioner. On September 30, 3011, Plaintiff filed a Motion to Reverse Without Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision. (Document No. 8). On October 31, 2011, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 9). Plaintiff replied on November 14, 2011. (Document No. 10).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent legal research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming

the Decision of the Commissioner (Document No. 9) be GRANTED and that Plaintiff's Motion to Reverse Without or, Alternatively, With a Remand for a Rehearing the Commissioner's Final Decision (Document No. 8) be DENIED.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application on behalf of her eight year old daughter for SSI on September 9, 2008 alleging disability since her birth in 1999.  (Tr. 131-137).  The application was denied initially on February 17, 2009 (Tr. 77-79) and on reconsideration on May 6, 2009.  (Tr. 84-87).  On May 12, 2009, Plaintiff requested an administrative hearing.  (Tr. 95).  On August 17, 2010, Administrative Law Judge Randy Riley (the "ALJ") held a hearing at which Plaintiff, represented by counsel, and a medical examiner ("ME") appeared and testified.  (Tr. 21-53).  The ALJ issued a decision unfavorable to Plaintiff on September 2, 2010.  (Tr. 4-20).  The Decision Review Board selected the decision for review but on January 11, 2011 notified Plaintiff that it had failed to complete its review within the time allowed, making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-3).  A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's conclusions as to the severity of her mental impairments is not supported by substantial evidence, and that the case should be remanded to consider "new and material evidence" consisting of a post-decision diagnosis of psychosis.

The Commissioner disputes Plaintiff's claims and argues that the ALJ's findings are supported by substantial evidence and thus entitled to deference, and that the subsequent evidence proffered by Plaintiff does not warrant a sentence six remand.

### III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

### IV.  CHILDHOOD DISABILITY DETERMINATION

A child under age eighteen is considered disabled, and is entitled to SSI benefits, if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(c). The Social Security regulations include a three-step test for the purpose of adjudicating children's disability claims under this standard.  20 C.F.R. § 416.924(b)-(d) (2004).  That test, known as the Children's Benefit Analysis, requires the ALJ to determine: (1) whether the child is engaged in "substantial gainful activity," (2) whether the child has "a medically determinable impairment[ ] that is severe," and (3) whether the child's "impairment(s)...meet, medically equal, or functionally equal [a] list[ed impairment]."  Id.  A negative answer at any step precludes a finding of disability.  20 C.F.R. § 416.924a.  "The claimant seeking [childhood] benefits bears the burden of proving that his or her impairment meets or equals a listed impairment."  Hall o/b/o Lee v. Apfel, 122 F. Supp. 2d 959, 964 (N.D. Ill. 2000) (citing Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999)).

## A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making

the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir.

1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Three-step Evaluation

The ALJ must follow three steps in evaluating a claim of childhood disability. See 20 C.F.R. § 416.924. In particular, the ALJ must determine whether: (1) the child is engaged in substantial gainful activity; (2) the child has an impairment or combination of impairments that is severe; and (3) the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of the regulations. 20 C.F.R. §§ 416.924(b)-(d). If, at the third step of the analysis, the ALJ determines that the child's impairment does not meet or equal a listed impairment, the ALJ must then consider whether the child's impairment is equivalent in severity to that of a listed impairment (i.e., whether it "results in limitations that functionally equal the listings"). 20 C.F.R. § 416.926a(a). Provisions for functional equivalence are established in 20 C.F.R. § 416.926a. Stated generally, to functionally equal a listed impairment, a child must demonstrate an "extreme" limitation in one area of functioning, or show "marked" limitation in two areas of functioning. 20 C.F.R. § 416.926a(a). The ALJ must review the following six areas or "domains" of functioning: acquiring and using information; attending and completing tasks; interacting with others; moving about and manipulating objects; caring for yourself; and health and physical well-being. 20 C.F.R. § 416.926a(b)(1), (g-1).

A "marked" limitation is found where a claimant's impairment(s):

> interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s)

-8-

limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i). While an "extreme" limitation is found where a claimant's

impairment(s):

interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i).

## 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis

and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the

implication must be so clear as to amount to a specific credibility finding." <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was ten years old on the date of the ALJ's decision. (Tr. 10, 131). Plaintiff alleges disability from birth due to ADHD, learning disabilities and speech problems. (Tr. 229).

Plaintiff underwent a speech/language consultative evaluation on June 15, 2007. (Tr. 403-404). The evaluation revealed that she had normal hearing bilaterally, normal articulation skills with excellent connected speech intelligibility, average expressive language skills, below average receptive language skills and a low average combined CORE language score. (Tr. 404). On September 22, 2008, Dr. Allison Schettini Evans, a pediatric neuropsychologist, performed a neuropsychological assessment of Plaintiff. (Tr. 417-437). Plaintiff had been referred for the evaluation because of concerns about her ability to focus, comprehend and process information, as well as behavioral difficulties that had worsened over the preceding two to three years. (Tr. 417). Dr. Evans noted that Plaintiff presented with significant mood and behavioral problems, but said she could be very sweet, endearing and cooperative. (Tr. 425). Behavioral concerns, such as problems with attention regulation, distractibility, hyperactivity, and restless behavior, were consistent with her diagnosis of ADHD. <u>Id.</u> Overall, her intellectual abilities ranged from low average to average. (Tr. 426). During the evaluation, she was very cooperative, polite and made excellent efforts. <u>Id.</u> Her mother reported that there were days when Plaintiff regulated her behavior well and wanted to help others. <u>Id.</u> Dr. Evans diagnosed Plaintiff with mood disorder, not otherwise specified; attention-deficit/hyperactivity disorder, combined type; and oppositional defiant disorder. (Tr. 427).

On November 12, 2008, Ms. Gladys Cano, LICSW, performed an initial intake assessment

of Plaintiff for Gateway Healthcare, Inc. (Tr. 439-454). Plaintiff's mother reported that she sought a lot of attention and had problems concentrating at school. (Tr. 439). It was noted that Plaintiff had some friends, and enjoyed drawing, painting, some sports and participating in the Girl Scouts. (Tr. 443). She also participated in cheerleading. Id. She was rated as "very able" to function in terms of personal hygiene and able in other life skills such as dressing and shopping. (Tr. 445).

Plaintiff visited her pediatrician, Dr. Peter Howland, on November 14, 2008. (Tr. 499-500). Dr. Howland noted that her ADHD created problems at home, socially, and at school, but the problems were improving. (Tr. 499). It appeared that Plaintiff was responding to medication, but she needed a higher dose. Id.

Ms. Jessica Monteiro, MSW, began caring for Plaintiff on December 29, 2008. (Tr. 456). Plaintiff had diagnoses of ADHD and mood disorder, NOS. (Tr. 455). Ms. Monteiro noted that Plaintiff's problems included depressed mood, negative attention-seeking behaviors, refusal to go to sleep and nightmares. (Tr. 456-458).

During a follow-up visit with Dr. Howland on December 30, 2008, Dr. Howland and Plaintiff's mother discussed Plaintiff's medication regimen. (Tr. 495-496). They ultimately agreed to institute a trial of Dexedrine Spansule. Id.

Speech language pathologist Patricia Bellini, MS, performed a speech and language re-evaluation of Plaintiff on January 7, 2009. (Tr. 580-582). Ms. Bellini indicated that the test results should be viewed with caution, as test measures were not fully formed on bilingual children or children exposed to a different languages, thus, the results might underestimate her true potential in the language area and not give a clear picture of her use and understanding of language. (Tr. 580). She noted that Plaintiff was pleasant and cooperative; she was very talkative, but she tired

quickly. (Tr. 581). Plaintiff needed to be brought back to task, as her focus was often lost and she would become "antsy." Id. Ms. Bellini reported that overall, Plaintiff's language skills were approximately 1½ standard deviations below the mean. (Tr. 582). Her overall vocabulary skills were within the low average range. Id. Plaintiff's hearing was considered to be within normal limits, her articulation skills were within normal limits, and her voice and fluency were within normal limits. Id.

On January 21, 2009, child and adolescent psychiatrist Dr. Pamela Shuman met with Plaintiff for a medication evaluation. (Tr. 486-487). Plaintiff was taking Dexedrine Spansule that had been prescribed by her pediatrician, but Plaintiff's mother reported that the medication's effects were not lasting through the school day. (Tr. 486). Dr. Shuman noted that Plaintiff's sleep hygiene was somewhat improved but not optimal. Id. Plaintiff showed some improvement on Mirtazapine. Id. Plaintiff followed up with Dr. Shuman on March 5, 2009. (Tr. 489-490). Dr. Shuman assessed her with major depressive disorder, ADHD and learning disabilities. (Tr. 489). She observed a clear improvement in Plaintiff's sleep with Mirtazapine and her pediatrician was managing her ADHD medications. Id. Dr. Shuman thought the Dexedrine had been at least partially effective in treating her ADHD. Id.

On February 10, 2009, state agency reviewing psychologist J. Coyle, Ph.D., completed a childhood disability evaluation form, rating Plaintiff's impairments and functional limitations. (Tr. 462-467). Dr. Coyle opined that Plaintiff's impairments were severe, but they did not meet, medically equal or functionally equal the listings. Id. Specifically, Dr. Coyle indicated that Plaintiff had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others and caring for herself, and she had no

limitations in moving about and manipulating objects and in health and physical well-being. Id.

Plaintiff followed-up with Dr. Howland on March 24, 2009. (Tr. 491). She was reportedly doing better at school with Dexedrine, but the effects seemed to wear off around noon. Id. She had just run out of medications, and Dr. Howland noted that she should have run out three weeks earlier. Id. Apparently, Plaintiff had not been taking the medications on the weekends and had started the medications one week late due to an illness. Id.

Plaintiff met with child and adolescent psychiatrist Dr. Olga Smetkov on April 3, 2009. (Tr. 503-504). Plaintiff's mother was concerned that Plaintiff was "bored all the time." (Tr. 503). She was not focusing, impulsive and easily followed peers, resulting in trouble at school. Id. Dexedrine had been mostly effective, but Plaintiff's mother reported that after the dosage was recently increased, Plaintiff became more cranky and "unhappy looking." Id. On mental status examination, Plaintiff was in good spirits with fluent and clear speech and no abnormal movements. Id. She did not have significant problems staying in her chair, and her interactions with her mother were appropriate and affectionate. Id. Dr. Smetkov diagnosed Plaintiff with major depressive disorder, moderate; ADHD, combined type; and learning disorder. Id. Plaintiff attended family therapy with her mother between June 2009 and October 2009. (Tr. 558-563, 570-575). Therapy was intended to develop assertiveness and interactive skills, assist with problem-solving, enhance communication skills and foster symptom management and skill building. (Tr. 573). Plaintiff's mother told Dr. Howland in July 2009 that therapy was helping. (Tr. 568). At that time, Dr. Howland noted that Plaintiff's ADHD was poorly controlled; and that she had not responded to Dexedrine. (Tr. 569). On follow-up with Dr. Howland on July 22, 2009, Plaintiff's mother reported that Methylin had helped, and Plaintiff's school agreed, but its benefits did not last long enough. (Tr. 566). Dr.

Howland prescribed Concerta. (Tr. 567). When she returned on August 5, 2009, she was not taking any medications because NHP had refused the prescription for Concerta. (Tr. 564).

On February 23, 2010, Plaintiff underwent an intake assessment with Gateway Healthcare, Inc. (Tr. 522-549). She had been biting herself on a daily basis for three weeks because she was bored, frustrated, or angry. (Tr. 522). She was having behavioral problems at school, and although her grades were okay, they could be better if she were able to complete work. Id. Plaintiff had friends at school, but also struggled with peers. (Tr. 526). She participated in Girl Scouts, and loved it, and she also enjoyed dancing, games and singing. Id. Plaintiff presented as very articulate, energetic and outspoken, but she struggled with authority and concentration, and her moods could change quickly and dramatically. (Tr. 537). She was taking Concerta. (Tr. 539).

On April 1, 2010, psychiatric clinical nurse specialist Denise Duplessis, M.S., P.C.N.S., evaluated Plaintiff. (Tr. 513-516). Plaintiff had been referred due to her ongoing problems getting along with her siblings and her peers. (Tr. 513). She had a history of fighting at school, but it had stopped after she started taking Concerta. Id. However, at her current dosage, she felt she was very quiet with little personality. Id. Plaintiff's mother reported that when the Concerta wears off, she was much more talkative and would speak quickly with difficulty focusing and following rules. (Tr. 515). It was agreed that Plaintiff would resume Mirtazapine for her sleep difficulties. Id. At a follow-up appointment with Nurse Duplessis on May 5, 2010, Plaintiff was reportedly sleeping without difficulty, but she was defiant and disrespectful of her mother's boyfriend. (Tr. 511). Nurse Duplessis prescribed short-acting Methlyphenidate after school "to decrease the conflict at home." Id.

Dr. Howland completed a functional assessment questionnaire on June 14, 2010. (Tr.

577-579). He opined that Plaintiff had extreme limitations in attending and completing tasks, marked limitations in acquiring and using information, interacting and relating with others and caring for herself, and less than marked limitations in moving about and manipulating objects and in health and physical well-being. Id.

On July 21, 2010, Ms. Monteiro completed a functional assessment questionnaire. (Tr. 583-586). She opined that Plaintiff had extreme limitations in acquiring and using information, interacting and relating with others, moving about and manipulating objects and in her health and physical well-being. Id. She further opined that Plaintiff had marked limitations in attending and completing tasks and caring for herself. Id.

## A.    The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 3 of the three-step sequential process for evaluating disability in children. See 20 C.F.R. § 416.924. The ALJ found that Plaintiff's ADHD and affective disorder were "severe" impairments within the meaning of 20 C.F.R. § 416.924(c). (Tr. 10). However, he concluded that such impairments did not, either singly or in combination, meet or medically equal any of the Listings. Id. As to the six functional equivalence domains, the ALJ only found a marked impairment in attending and completing tasks and found either no limitation or a less than marked limitation in the other five domains. (Tr. 13-19). Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 19-20).

**B.	The Medication Evaluation Performed by Nurse Duplessis is not "New and Material" Evidence**

In order to obtain a sentence six remand, Plaintiff is required to establish that "there is <u>new</u> evidence which is <u>material</u>...."  42 U.S.C. § 405(g) (emphasis added).  In order for the evidence submitted by Plaintiff to be deemed "new" within the meaning of the Act, the evidence must not have been contained within the administrative record at the time the ALJ rendered his decision.  <u>See</u> <u>Evangelista v. Sec'y of Health and Human Servs.</u>, 826 F.2d 139 (1st Cir. 1987).  <u>See also</u> <u>Sullivan v. Finkelstein</u>, 496 U.S. 617, 626 (1990) (Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding.").  In <u>Evangelista</u>, the First Circuit ruled that an examination performed after the Appeals Council denial was not "new" and "material" within the meaning of the Act.  <u>Evangelista</u>, 826 F.2d at 139-140.  The <u>Evangelista</u> Court focused primarily on the fact that the plaintiff was attempting to admit an opinion from a "retained physician" regarding conditions which were already mentioned elsewhere in the ALJ's "voluminous, detailed, and complex" medical record.  <u>Id.</u> at 140.  Rather than "offer[ing]...new facts of any relevance," the Court of Appeals concluded that the physician's affidavit and report merely "arrange[d] the factual particles contained in the record in a somewhat different pattern."  <u>Id.</u>

Here, Plaintiff seeks to introduce treatment records from late 2010/early 2011 which post-date the ALJ's adverse decision on review in this case.  (<u>See</u> Document No. 8-1).  These records consist of three entries made by Nurse Duplessis which conclude with her rendering a new diagnosis of psychosis on February 7, 2011.  <u>Id.</u>  While these records are "new" evidence, they are not material for the following reasons.  First, the diagnosis was made solely by Nurse Duplessis who is not an "acceptable medical source."  <u>See</u> 20 C.F.R. §§ 416.902, 908 and 913(a).  The psychosis finding was not confirmed by a psychiatrist or psychologist and thus the "diagnosis" would not be legally

sufficient by itself to establish an impairment.

Second, Plaintiff never previously claimed disability due to psychosis. Rather, Plaintiff, who was represented by counsel during the administrative process, alleged disability solely due to other mental impairments including ADHD and learning disabilities. (Tr. 229). See Conte v. McMahon, 472 F. Supp. 2d 39, 45 (D. Mass. 2007) (Claimant "had legal representation, which places less of a burden on the [ALJ] independently to develop the record."). Plaintiff never raised the issue of psychosis during the administrative proceedings nor did she allege any symptoms suggesting a psychotic disorder.

Further, "[a]n implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previous non-disabling condition." Beliveau ex rel. Beliveau v. Apfel, 154 F. Supp. 2d 89, 95 (D. Mass. 2001) (quoting Szubak v. Sec'y of Health and Human Servs., 745 F.2d 831, 833 (3rd Cir. 1984)). Nurse Duplessis diagnosed Plaintiff with "psychosis, NOS" on February 7, 2011, over five months after the ALJ's decision and based on a discrete incident which took place in late 2010. (See Document No. 8-1 at p. 6). Even assuming that Nurse Duplessis' diagnosis could establish a medically determinable impairment, Plaintiff has not shown that the impairment was present during the period prior to the ALJ's decision, and is not a new condition or a subsequent deterioration in her condition. See Beliveau, 154 F. Supp. 2d at 95. This further precludes a finding that the new evidence tendered is material. Id.

For the reasons discussed above, I do not find that Plaintiff has met the materiality threshold and thus do not recommend a sentence six remand. I offer no opinion as to whether or not Plaintiff might be able to establish disability on the basis of psychosis in the future. See Mills v. Apfel, 244

F.3d 1, 9 (1st Cir. 2001) (recognizing that where a claimant's condition has changed or deteriorated, "there is nothing that prevents a new application directed to the future, assuming she can muster the medical support to show the severity of her conditions"); and Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 141 (1st Cir. 1987) (recognizing Congress' intent that sentence six remands "should be few and far between, that a yo-yo effect be avoided – to the end that the process not bog down and unduly impede the timely resolution of social security appeals."). However, this record does not support a sentence six remand.

### C. The ALJ Properly Evaluated the Medical Evidence

In addition to seeking a sentence six remand, Plaintiff contends that reversal and remand is warranted because the ALJ failed to properly evaluate the medical evidence. For the reasons discussed below, Plaintiff has shown no reversible error in the ALJ's assessment of the medical evidence. The ALJ's findings are supported by substantial evidence of record, and thus are entitled to deference. "[An ALJ] may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors." Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (citing Shaw v. Sec'y of Health and Human Servs., 25 F.3d 1037 (1st Cir. 1994)). That is exactly what the ALJ did in this case, and there is no error.

Here, the ALJ was presented with conflicting evidence as to Plaintiff's functional limitations and chose to give "greatest weight" to the opinions and testimony of Dr. Cox, a board certified psychologist. (Tr. 19). Dr. Cox reviewed the medical evidence of record and testified as a medical expert. (Tr. 31-48). Dr. Cox opined that Plaintiff suffered from ADHD and an affective disorder and that she had marked limitations in attending and completing tasks but either no limitation or less

than marked limitations in the other five functional domains. (Tr. 32-33, 41-42). In addition, when questioned by Plaintiff's counsel, Dr. Cox indicated that he disagreed with the greater functional limitations assessed by Dr. Howland, Plaintiff's pediatrician, and Ms. Monteiro, Plaintiff's therapist, because their assessments were not supported by the treatment records. (Tr. 45). Dr. Cox reviewed the medical evidence of record and listened to the mother's testimony before the ALJ. The ALJ thoroughly discusses all of the opinion evidence in his decision and cannot be faulted on this record for giving "greatest weight" to and directly relying upon Dr. Cox's expert opinions in deciding this case. While Plaintiff may disagree with those opinions, she has shown no error in the ALJ's review of the medical evidence warranting remanding in this case. See Rivera-Torres v. Sec'y of Health and Human Servs., 837 F.2d 4, 5 (1st Cir. 1988) (the resolution of evidentiary conflicts is within the province of the ALJ).

## VI.    CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and that Plaintiff's Motion to Reverse Without Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision. (Document No. 8) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605

(1st Cir. 1980).


    /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 30, 2011